IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **KENNETH D. MURENA**, in his capacity as court-appointed Receiver of Drive Planning, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>**JON CLEMENT, and TRIGGER TIME GUN AND PAWN, LLC,**<br>    Defendants.<br>_____ | Civil Action No._____ |

## ANCILLARY COMPLAINT

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") of Drive Planning, LLC, acting pursuant to this Court's Order Appointing Receiver entered in the above-captioned enforcement action and pursuant to Fed. R. Civ. P. 66 and 28 U.S.C. § 959, sues Jon Clement and Trigger Time Gun and Pawn, LLC (collectively "Defendants"), for actual and constructive fraudulent transfers under the Georgia Uniform Voidable Transactions Act, O.C.G.A. §§ 18-2-70, *et seq.* ("GUVTA"), and unjust enrichment under Georgia common law, to avoid, recover, and disgorge the approximately $1,400,000 that these Defendants collectively received in the form of improper transfers from the Drive Planning Ponzi scheme:

## I.   INTRODUCTION

From 2020 through 2024, Defendant Russell Todd Burkhalter, through the Receivership Entity Drive Planning, LLC ("Drive Planning"), operated a Ponzi scheme that raised approximately $380 million from roughly 2,400 investors, resulting in at least $220 million in net investor losses. The U.S. Securities and Exchange Commission (the "SEC") initiated an enforcement action styled *SEC v. Drive Planning, LLC, et al.*, Case No. 1:24-cv-03583-VMC (the "SEC Action"), pending in this District.

The Court presiding over the SEC Action appointed the Receiver to marshal, preserve, and administer Drive Planning's assets, including litigation claims to recover investor funds improperly or illegally paid to third parties. The Receiver's forensic investigation revealed that approximately $1.4 million in investor funds was transferred from Drive Planning to Trigger Time Gun and Pawn, LLC ("Trigger Time"). Jon Clement used these investor-derived funds to acquire firearms, ammunition, and related inventory (the "Firearm Inventory") sold through a storefront which at various times was branded Trigger Time Gun and Pawn or TBR Outdoor Supply. Jon Clement also received substantial portions of those funds and used them for personal expenses.

The transfers to Mr. Clement and Trigger Time were not made in exchange for any services, goods, or other reasonably equivalent value provided to Drive

Planning. Mr. Clement had no business relationship with Drive Planning, performed no services on its behalf, and provided nothing of value to Drive Planning or its investors. The funds were diverted for his own use and for the operation of an unrelated retail firearms business, rendering the transfers improper and recoverable by the Receiver.

This ancillary action furthers the Receiver's duty to recover assets of Drive Planning and to return those assets to the investors who collectively lost more than $220 million as a result of the fraudulent transfers to, among others, the Defendants named herein.

## II.    PARTIES

1. Plaintiff, Kenneth D. Murena, is the court-appointed Receiver of Drive Planning, LLC, appointed pursuant to the Order Appointing Receiver entered in the SEC Action (the "Appointment Order"). *See* Sec Action at ECF No. 10. Plaintiff maintains his principal office in Miami, Florida.

2. Defendant, Jon Clement, is an individual who, upon information and belief, resides at Hardscrabble Road, Mineral Bluff, Georgia 30559.

3. Trigger Time Gun and Pawn, LLC, is a Georgia entity under Mr. Clement's complete control and is the alter-ego of Mr. Clement.

### III.    JURISDICTION AND VENUE

**A.    Subject Matter Jurisdiction**

4. This Court has subject matter jurisdiction over this ancillary action by virtue of the Appointment Order, and this action is incidental to the preservation, collection, and distribution of assets of the Receivership Estate.

5. "Courts have long recognized a federal court's supplemental jurisdiction over actions related to a receivership established in federal court."[1] This Court has subject-matter jurisdiction over the state-law claims asserted in this complaint in this ancillary action pursuant to 28 U.S.C. §§ 754, 1367 because those claims are ancillary to the SEC Action, *SEC v. Drive Planning, LLC*, Civ. Action No. 24-cv-03582-VMC (N.D. Ga.), over which the Court in this district has jurisdiction pursuant to 28 U.S.C. § 1331.

6. The SEC Action is within the jurisdiction of the federal court in this district under 28 U.S.C. § 1331 and this ancillary action is in furtherance of the Receiver's duties under the Appointment Order entered in the SEC Action.

**B. Personal Jurisdiction**

7. This Court has personal jurisdiction over Defendants because Defendants reside in the Northern District of Georgia and conducted business with

---

[1] *Mandel v. Howard*, No. 11-23620-Civ-COOKE, 2012 U.S. Dist. LEXIS 43948, at *7 (S.D. Fla. Mar. 28, 2012) (collecting cases).

Drive Planning, which was operating, conducting, engaging in, and carrying on a fraudulent business or venture in, among other locations, the Northern District of Georgia.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 754, 1692 because the SEC Action is pending in this district.

9. All conditions precedent to the bringing of this action have been performed, waived, satisfied, or have otherwise occurred.

## IV. GENERAL FACTUAL AND PROCEDURAL BACKGROUND

### *The SEC Commences its Enforcement Action*

10. On August 13, 2024, the SEC filed its complaint ("SEC Complaint") against Drive Planning and Burkhalter and various relief defendants, thereby commencing the SEC Action. *See* SEC Action at ECF No. 1.

11. The SEC Action arises out of the massive Ponzi scheme orchestrated by Drive Planning, LLC ("Drive Planning") and its principals. From 2020 through 2024, Drive Planning misled more than 2,400 investors into investing approximately $380 million into a fraudulent real estate and tax lien investment scheme having many of the attributes of a classic Ponzi scheme.

12. Simultaneously, the SEC obtained preliminary injunctive relief, and other emergency relief. *See id.* at ECF Nos. 2, 11, 16.

13. The SEC, along with filing the SEC Complaint, sought and obtained appointment of the Receiver through the Appointment Order. *See id.* at ECF Nos. 2, 10.

14. The Appointment Order created a receivership estate ("Receivership Estate") comprised of all of the assets of Drive Planning, whether those assets were owned directly by Drive Planning or were in the possession of third parties subject to claims by the Receivership Estate to avoid, recover, and disgorge the improper transfers made by wrongdoers. *See id.* at ECF No. 10.

15. The Appointment Order authorizes the Receiver to investigate and prosecute claims against individuals and entities who/that improperly received funds from Drive Planning pre-receivership. *See id.* Further, pursuant to the requirement in the Appointment Order, the Receiver sought and obtained authority from that court to commence this action asserting the claims set forth herein. *See id.* at ECF Nos. 229, 234.

16. Drive Planning's cash flow relied entirely on a continuous influx of new investor money, which was used to satisfy obligations owed to earlier investors, to fund commissions and bonuses of Drive Planning's agents, and to support the personal lifestyles of its principals.

17. By its very structure, Drive Planning was insolvent from inception. Each time Burkhalter and his agents accepted a new "investment," they

simultaneously created a liability (an obligation to repay that investment and deliver the returns falsely represented) without any corresponding legitimate asset or source of revenue.

18. Internally, Drive Planning's financial records reflected this insolvency where investor liabilities vastly exceeded assets. There was no independent source of income sufficient to sustain operations, let alone repay investors the hundreds of millions of dollars they were promised.

19. Accordingly, at all relevant times, Drive Planning was operating in a state of insolvency and with actual intent to hinder, delay, or defraud its creditors, rendering each such transfer voidable under Georgia law.

## V. LEGAL BASIS FOR THE RECEIVER'S CLAIMS

### *The Receiver Has Standing to Bring Fraudulent Transfer and Unjust Enrichment Claims*

20. The Receiver has standing to assert claims against third parties who/that received funds, caused damage, or who/that are in possession of assets belonging to the Receivership Estate. *See* 28 U.S.C. §§ 754 and 1692; *Scholes v. Lehman*, 56 F.3d 750 (7th Cir. 1995).

21. Therefore, the Receiver has standing to recover the $1.4 million received by Defendants as the transfer constitutes avoidable and recoverable fraudulent transfer and inequitable and unjust benefits subject to disgorgement under the unjust enrichment equitable claim.

7

22. The Court's removal of Burkhalter and his accomplices, appointment of the Receiver, and creation of the Receivership Estate and Receivership Entity Drive Planning, cleansed the Receivership Estate and Receivership Entity Drive Planning such that the Receiver has standing to bring claims to recover the payments pre-Receivership Entity Drive Planning made to Defendants.

## VI. PAYMENTS TO DEFENDANTS SUBJECT TO AVOIDANCE, RECOVERY, AND DISGORGEMENT

23. The Receiver sues Defendants in this ancillary action to avoid and recover transfers in the total amount of $1,400,000 that Drive Planning made to them when it was running its Ponzi scheme in 2024. *See* **Exhibit A** – Wire Confirmation.

24. The Receiver will use funds recovered in this action to make an equitable distribution to defrauded investors who suffered net losses.

## VII. CLAIMS FOR RELIEF

### COUNT 1 – ACTUAL FRAUDULENT TRANSFER UNDER GUVTA

*(Receiver v. Jon Clement and Trigger Time Gun and Pawn, LLC)*

25. The Receiver sues Defendants and adopts, realleges, and incorporates paragraphs 1 through 24 into Count 1.

26. As set forth above, from 2020 to 2024 Drive Planning operated a Ponzi scheme and, as such, was insolvent and acting with actual intent to hinder, delay, or defraud creditors at all relevant times.

27. During 2024, Drive Planning transferred approximately $1,400,000 in investor-derived funds to Trigger Time, an entity wholly dominated and controlled by Jon Clement.

28. Trigger Time, as the initial transferee, received these transfers directly from Drive Planning and used them to acquire firearms, ammunition, and related inventory (the "Firearm Inventory") which were then sold through stores branded as Trigger Time Gun and Pawn or TBR Outdoor Supply, as well as to pay expenses that benefited Jon Clement.

29. In addition, substantial portions of the Drive Planning funds transferred to Trigger Time were routed to or for the personal benefit of Jon Clement, including (without limitation), paying off loans owed on other assets of Mr. Clement, and other household or personal expenditures, rendering him a subsequent transferee and/or direct beneficiary of the fraudulent transfers.

30. Defendants did not provide Drive Planning with any goods, services, or other value at any time, including in exchange for the transfers.

31. Mr. Clement had no contractual, business, or operational relationship with Drive Planning that would justify the transfers, did not perform services for Drive Planning or its investors, and did not supply goods or value to Drive Planning commensurate with the amounts Defendants received. Instead, the transfers constituted a unilateral diversion of investor funds for Mr. Clement's benefit and for

the operation of his independent retail firearms business Trigger Time and Pawn, to the direct detriment of Drive Planning and its defrauded investors.

33. Defendants did not act in "good faith" when Defendants received, retained, and used the transferred funds. Defendants knew the funds originated from Drive Planning, a company with which they had no ownership, employment, or contractual relationship. Defendants accepted and expended the funds for purposes entirely unrelated to any legitimate Drive Planning obligation, including to pay personal and household expenses. Their knowing and continued use of those funds for personal and non-Drive-Planning purposes demonstrates a lack of good faith.

33. Drive Planning made the foregoing transfers in furtherance of its Ponzi scheme, not for reasonably equivalent value, and with actual intent to hinder, delay, or defraud creditors, including defrauded investors, within the meaning of O.C.G.A. § 18-2-74(a)(1).

34. Under the Ponzi-scheme presumption, transfers made in furtherance of a Ponzi scheme are deemed to have been made with actual intent to defraud creditors. The Receiver will establish this presumption through Mr. Burkhalter's guilty plea agreement in the pending criminal action against him, expert testimony, and Drive Planning's books, records, and cash-flow analyses.

35. The operative intent for purposes of O.C.G.A. § 18-2-74(a)(1) is the transferor's intent (Drive Planning's), not the transferees.

36. Jon Clement received the benefit of transferred funds (including payment of medical and other personal expenses) and are therefore liable as a subsequent transferee and/or beneficiary of the fraudulent transfers within the meaning of O.C.G.A. § 18-2-78(b)(1)(B).

37. As a direct and proximate result of the foregoing transfers, Drive Planning and the Receivership Estate were injured through the dissipation of assets that otherwise would have been available for investors and other creditors.

38. Pursuant to O.C.G.A. § 18-2-74(a)(1) and the remedies provided by O.C.G.A. § 18-2-77, the Receiver is entitled to avoid and recover the transfers and obtain judgment against (i) Trigger Time as the initial transferee, and (ii) Jon Clement the individual for whose benefit the transfer was made and/or as subsequent transferee to the extent of the value he received. *See* O.C.G.A. § 18-2-78(b)(1).

39. The Receiver further seeks all other relief authorized by O.C.G.A. § 18-2-77, including attachment, injunction, or other provisional remedies as necessary to prevent further dissipation and to effectuate recovery.

40. The Receiver is entitled to prejudgment interest on the avoided transfers from the date of each transfer, together with costs and such other and further relief as the Court deems just and proper. *See, e.g.*, O.C.G.A. § 51-12-4.

Wherefore, the Receiver requests the entry of judgment avoiding the transfers; awarding recovery, jointly and severally, against Trigger Time as initial transferee

and against Jon Clement as the person whose benefit the transfers were made and/or as subsequent transferee, awarding prejudgment interest, costs, and such additional legal or equitable relief as the Court deems just and proper.

## COUNT 2 – CONSTRUCTIVE FRAUDULENT TRANSFER UNDER GUVTA

*(Receiver v. Jon Clement and Trigger Time Gun and Pawn, LLC)*

41. The Receiver sues Defendants and adopts, realleges, and incorporates paragraphs 1 through 24 into Count 2.

42. As described above, Drive Planning transferred approximately $1,400,000 in investor-derived funds to Trigger Time, an entity owned and controlled by Jon Clement.

43. Trigger Time used the transferred funds to acquire firearms, ammunition, and related inventory, to fund operations of its retail business known as Trigger Time Gun and Pawn, or at other times TBR Outdoor Supply, and to pay various personal and business expenses of Jon Clement.

44. Substantial portions of the transferred funds were also diverted to or for the personal benefit of Jon Clement, including paying off loans owed on other assets of Mr. Clement and other personal items, thereby rendering him a subsequent transferee and/or person for whose benefit the transfers were made.

45. The Receiver seeks to avoid and recover the $1.4 million in transfers made by Drive Planning to or for the benefit of Defendants pursuant to the

constructive fraudulent transfer provisions of the GUVTA, including O.C.G.A. § 18-2-74(a)(2) and § 18-2-75.

46. Drive Planning operated as a Ponzi scheme from 2020 through August 2024 and was insolvent at all relevant times. Each transfer made to Defendants occurred after Drive Planning had incurred obligations to investors that it could not satisfy.

47. Drive Planning made the transfers to Defendants while insolvent and without receiving reasonably equivalent value in exchange.

48. At the time of each transfer, Drive Planning either intended to incur, or reasonably should have believed it would incur, debts beyond its ability to pay as they became due, in violation of O.C.G.A. § 18-2-74(a)(2).

49. The Defendants did not provide reasonably equivalent value to Drive Planning in exchange for the $1.4 million in transfers they received. The funds were not repayment of any legitimate debt, nor did they satisfy any valid obligation owed by Drive Planning.

50. Rather, the funds were diverted investor monies (used to purchase inventory, pay business expenses, and cover personal obligations) yielding no legitimate value to Drive Planning or its investors.

51. Defendants did not act in "good faith" when Defendants received, retained, and used the transferred funds. Defendants knew the funds originated from

13

Drive Planning, a company with which they had no ownership, employment, or contractual relationship. Defendants accepted and expended the funds for purposes entirely unrelated to any legitimate Drive Planning obligation, including to pay personal and household expenses. Their knowing and continued use of those funds for personal and non-Drive-Planning purposes demonstrates a lack of good faith.

52. Trigger Time and Jon Clement benefited directly and indirectly from these transfers.

53. As a direct and proximate result of these transfers, Drive Planning and the Receivership Estate were injured through dissipation of assets that would otherwise have been available for equitable distribution to the investors and other creditors of Drive Planning.

54. None of the transfers were made for reasonably equivalent value; instead, they represent the wrongful diversion of investor proceeds in furtherance of Drive Planning's Ponzi scheme.

55. The transfers described herein are avoidable and recoverable from:

    a. Trigger Time, as the initial transferee under O.C.G.A. § 18-2-78(b)(1)(A); and

    b. Jon Clement, as the person for whose benefit the transfers were made or as subsequent transferee to the extent of the value he received, under O.C.G.A. § 18-2-78(b)(1)(B).

56. The Receiver is entitled to an award of prejudgment interest on the avoided transfers pursuant to O.C.G.A. § 51-12-4, from the date of each transfer until recovery.

57. Based upon information and belief, Jon Clement dominated and controlled Trigger Time and caused it to use the transferred funds for his benefit.

58. Because the transfers were made while Drive Planning was insolvent and for no reasonably equivalent value, they are voidable and recoverable under O.C.G.A. §§ 18-2-74(a)(2), 18-2-75, and 18-2-78(b)(1)(B).

WHEREFORE, the Receiver requests the entry of judgment avoiding and recovering the transfers; awarding recovery, jointly and severally, against Trigger Time Gun and Pawn, LLC and Jon Clement, awarding prejudgment interest, costs, and such other and further relief as this Court deems just and proper.

### *ALTERNATIVE* COUNT 3 – UNJUST ENRICHMENT UNDER GEORGIA COMMON LAW

*(Receiver v. Jon Clement and Trigger Time Gun and Pawn, LLC)*

59. The Receiver sues Defendants and adopts, realleges, and incorporates paragraphs 1 through 24 into Count 3.

60. As described above, Drive Planning transferred approximately $1,400,000 in investor-derived funds to Trigger Time, an entity owned and controlled by Jon Clement, which used those funds to acquire firearms, ammunition,

and related inventory, to pay business expenses, and to fund Mr. Clement's personal obligations.

61. Portions of the transferred funds were further diverted to or for the benefit of Jon Clement, including paying off loans owed on other assets of Mr. Clement and other personal and household costs.

62. The Receiver, in this Count 3, seeks disgorgement of all such funds paid or transferred to or for the benefit of Defendants pursuant to the Georgia common law doctrine of unjust enrichment.

63. Drive Planning conferred a substantial benefit upon Defendants in the form of these transfers, all of which were derived from investor money misappropriated in furtherance of the Drive Planning Ponzi scheme.

64. Defendants received and accepted that benefit, knowing or having reason to know that the transfers were not legitimate income or consideration for any bona fide obligation owed by Drive Planning.

65. The transfers were made from investor funds, not from Drive Planning's own legitimate operations or profits, because Drive Planning had no independent source of revenue.

66. Defendants provided no compensation, consideration, or benefit to Drive Planning in exchange for receiving the transferred funds, nor did Drive Planning receive any reasonably equivalent value in return.

67. Defendants should not be permitted to profit from the receipt or retention of these investor-derived funds simply because they were not themselves the originators of the fraud.

68. Defendants have no legitimate claim of entitlement to the $1.4 million in funds they received directly or indirectly from Drive Planning.

69. Based on these facts, it would be unjust and inequitable for Defendants to retain possession or benefit of any portion of the misappropriated investor funds received from Drive Planning.

70. The transfers from Drive Planning to Trigger Time, and the subsequent transfers to or for the benefit of Jon Clement, were not made in exchange for any lawful or legitimate service but represented nothing more than diverted investor funds used to acquire property and pay personal and business expenses.

71. Funds derived from a Ponzi scheme, such as these, are never received in exchange for value, and Georgia law prohibits a recipient from retaining or profiting from such illegal transactions.

72. No agreement or understanding between Drive Planning and the Defendants under which these funds were transferred is legally enforceable, because the underlying transactions were illegal and contrary to public policy.

73. Defendants should not receive a disproportionate benefit or retain investor funds that rightfully belong to the Receivership Estate and the defrauded investors.

74. These wrongful transfers directly and proximately injured Drive Planning and the Receivership Estate by depleting its assets and depriving defrauded investors of potential recovery.

75. As a result, Defendants have been unjustly enriched at the expense of Drive Planning and its investors, and in equity and good conscience, must disgorge all funds and benefits received.

76. The Receiver is therefore entitled to disgorgement and restitution of the $1.4 million transferred to or for the benefit of Defendants under Georgia's common law of unjust enrichment.

77. The Receiver is further entitled to an award of prejudgment interest on all amounts owed from the date of each transfer until recovery.

78. Jon Clement dominated and controlled Trigger Time and caused it to use the transferred funds for his benefit.

79. As such, both the initial transfers to Trigger Time and the subsequent transfers to Jon Clement are subject to disgorgement and recovery as unjust enrichment under Georgia law.

WHEREFORE, the Receiver requests the entry of judgment requiring Defendants to disgorge all funds and benefits received from or traceable to Drive Planning; awarding prejudgment interest, costs, and such other and further relief, legal or equitable, as this Court deems just and proper.

Dated: February 24, 2026.

<u>Henry F. Sewell</u>
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com
*Local Counsel for Kenneth D. Murena,*
*As Court-Appointed Receiver*

Adriana Pavon
Admitted *Pro Hac Vice* in
Case No. 1:24-cv-03583-VWC
*PHV Admission Forthcoming*
In this ancillary action
Florida Bar Number 1025060
apavon@dvcattorneys.com
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone: (305) 371-3960

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*